THE STATE OF OHIO, APPELLANT, *v.* BUTLER ET AL., APPELLEES.

24

(No. 40361—Decided June 28, 1967.)

*Mr. Norman J. Putman,* prosecuting attorney, and *Mr. David D. Dowd, Jr.,* for appellant.

*Mr. Vincent Bernabei* and *Mr. Harry W. Schmuck,* for appellees.

STRAUB, J.  The discussion and the determination of the issues presented herein necessarily involve reference to *State* v. *Patterson,* 172 Ohio St. 319, decided in June 1961.  The facts in the instant causes and the facts in the *Patterson case* are practically identical and all arose in Stark County, Ohio.

In *Patterson,* the codefendants, Patterson and Bradley, were indicted under Section 2901.05, Revised Code, for murder in the second degree. Patterson was tried separately. The trial court refused to instruct the jury on the lesser or included offenses of manslaughter in the first degree and manslaughter in the second degree.  The jury returned a verdict finding Patterson guilty, as indicted, of murder in the second degree.  The Court of Appeals reversed the trial court for failure to instruct the jury on the lesser and included offenses of manslaughter in the first degree and manslaughter in the second degree and ordered a new trial.  The state and Patterson both appealed to this court and, upon consideration thereof, this court reversed the appellate court.

The two-paragraph syllabus of the *Patterson case* is as follows:

"1. The factual situation in each criminal case determines the necessity of instructing the jury on lesser included offenses rather than the fact that certain offenses are literally included in the crime formally charged in the indictment. (*Bandy* v. *State*, 102 Ohio St. 384, approved and followed.)

"2. Even though facts in such a case may warrant instructions to the jury on lesser included offenses, the refusal to so instruct is tantamount to a directed verdict of not guilty of all the lesser included offenses, inures to the defendant's benefit and is not prejudicial to him."

In the *Patterson* opinion the court, applying the first paragraph of the syllabus of that case, affirmed the finding of the Court of Appeals that manslaughter in the first degree was a lesser included offense under the evidence in that case. Strangely enough, however, in the *Patterson case*, where the undisputed evidence was that three people were killed in a collision resulting from a high-speed drag race by Patterson and his codefendant, Bradley, the opinion fails to even mention whether manslaughter in the second degree was a lesser included offense.

Less than four years after *Patterson* was decided, this court overruled the second paragraph of the syllabus in *Patterson* in the case of *State* v. *Loudermill*, 2 Ohio St. 2d 79, the syllabus of which case is as follows:

"Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser offense included in the offense for which defendant was indicted and tried, the refusal of the trial court to charge upon that lesser included offense is error prejudicial to the rights of defendant. (Paragraph two of the syllabus of *State* v. *Patterson*, 172 Ohio St. 319, overruled; *Freeman* v. *State*, 119 Ohio St. 250, and *State* v. *Muskus*, 158 Ohio St. 276, approvad and followed.)"

In the causes before us, the state, in a single appeal, appealed from the decisions of the Court of Appeals on the ground that manslaughter in the second degree is not a lesser included offense of the charge in the indictment, murder in the second degree.

The joint indictment in these causes states, as follows:

"* * * That Harold Butler and Jerry Anderson late of said county on or about the 8th day of May in the year of our Lord one thousand nine hundred and sixty-four, at the County of Stark, aforesaid did purposely and maliciously kill Philip Romano contrary to the statute in such cause made and provided, and against the peace and dignity of the state of Ohio."

On request, a bill of particulars was filed by the prosecutor, which states, as follows:

"* * * Now comes the state of Ohio, having been requested for a bill of particulars, and says that upon the trial of this cause it will prove in addition to the allegations of the indictment, which said allegations are incorporated herein by reference as fully as if rewritten herein in full, the following:

"1. That on or about May 8, 1964, at approximately 10:30 p. m. eastern daylight saving time in Stark County, Ohio, and on or near a certain highway known as state route 44 at a point on said highway approximately 1.1 mile south of the Portage County line, Jerry Anderson and Harold Butler purposely and maliciously killed Philip Romano by operating their respective motor vehicles in such a way that the motor vehicle operated by Jerry Anderson struck a motor vehicle in which Philip Romano was located with such force and violence as to cause the death of Philip Romano;

"2. That Harold Butler used a 1962 Chevrolet and Jerry Anderson used a 1959 Ford in this killing;

"3. That Harold Butler, aided, abetted or procured Jerry Anderson in killing Philip Romano;

"4. That Jerry Anderson aided, abetted or procured Harold Butler in killing Philip Romano."

Section 4511.18, Revised Code, captioned, "Manslaughter in second degree," is as follows:

"No person shall unlawfully and unintentionally kill another while violating any law of this state applying to the use or regulation of traffic. Any person violating this section is guilty of manslaughter in the second degree."

It is contended by the state that since neither the indictment nor the bill of particulars charges the defendants with a violation of a specific traffic law, a verdict by the jury finding the defendants guilty of manslaughter in the second degree

would be in violation of the constitutional rights of the defendants, citing *State* v. *Yudick*, 155 Ohio St. 269, and *State* v. *Yudick*, 158 Ohio St. 23. The prosecutor's concern for the constitutional rights of the defendants is difficult to comprehend, considering that it was the prosecutor who omitted to insert and allege a violation of a specific traffic law in the indictment or bill of particulars. In effect, the prosecutor is claiming error on the part of the Court of Appeals based on a deficiency in the indictment which the prosecutor prepared. This claim by the state as to what factors are essential to determine what is a lesser or included offense disregards entirely the evidence in a case and stresses the importance of the formal charge of the offense in the indictment.

In *Patterson*, on the issue of lesser and included offenses, the opinion of this court cited *Bandy* v. *State*, 102 Ohio St. 384, and quoted therein the first paragraph of the syllabus of that case which reads as follows:

"1. Murder in the first degree, literally considered, necessarily includes murder in the second degree and manslaughter. Whether in an indictment for murder in the first degree in the perpetration of a robbery, a charge is warranted as to murder in the second degree, or manslaughter, depends, however, not merely upon whether or not these are literally included in the formal charge, but upon whether or not there is any evidence tending to support a charge of murder in the second degree, or manslaughter."

The opinion in *Patterson* also stated:

"The rule of the *Bandy* case is to the effect that the *facts determine whether a charge must include lesser included offenses.* * * *" (Emphasis added.)

From the opinion by Judge Schneider in the *Loudermill case, supra*, we quote:

"The statutory commandments are clear. The *evidence*, as well as the law, governs the charge of the court in a criminal case (Section 2945.11, Revised Code), and the *charge* must be *consistent* with the *evidence*. *It is the duty of the court to give*, as well as that of the jury to consider, *a charge on the lesser included offenses which are shown by the evidence to have been committed*." (Emphasis added.)

Also, in the *Loudermill case,* Judge Schneider in the opinion quotes and approves the language of Judge Smith of the Court of Appeals in that case and, at page 80, states as follows:

"This salutary rule requires the jury neither to speculate nor to mete out punishment. On the contrary, if evidence tending to prove a lesser included offense is present and a jury is inhibited by the charge from finding defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the elements of the crime charged in the indictment and to find defendant guilty as charged rather than risk, by a verdict of acquittal, turning the malefactor loose upon a society grievously harmed by his act. This is speculation at its worst and a natural and probable consequence of a failure to charge on a lesser included offense when evidence of its commission is present. Particularly is this true in cases of murder which require the additional element of 'purpose.' "

The evidence in the *Anderson* and *Butler cases* is that one Philip Romano was killed as a result of a high-speed drag race while the two codefendants operated their cars in violation of certain traffic laws.

We list here the following traffic sections of the Revised Code which, from the evidence in these causes, Anderson and Butler could have been violating, and which violations could have resulted in the killing of Philip Romano.

| | |
|---|---|
| Section 4511.251, Revised Code. | Drag racing. |
| Section 4511.21, Revised Code. | Speed limits. |
| Section 4511.25, Revised Code. | Operating on right half of roadway. |
| Section 4511.27, Revised Code. | Overtaking and passing. |
| Section 4511.29, Revised Code. | Driving to left of center line. |

It should be noted that in Section 4511.18, Revised Code, hereinbefore quoted, there is the phrase, "unintentionally kill." The defendants, Anderson and Butler, in their respective cases, each testified that they never agreed to race their cars; that they did not intend to engage in a race; and that, at the time of the collision involved, they were not contesting or racing with each other. They testified further that at no time did they have any

intention or purpose to kill. With this testimony in these causes, there was evidence for the jury to consider from all the evidence whether the killing of Philip Romano was or was not intentional. Under the authorities aforementioned, there being evidence in these causes to support a finding by the jury of guilty of manslaughter in the second degree, it was prejudicial error for the trial court to refuse to instruct the jury on the lesser and included offense of manslaughter in the second degree. We, therefore, affirm the judgment of the Court of Appeals on that issue.

In these causes the trial court did instruct the jury on manslaughter in the first degree as a lesser included offense. Section 2901.06, Revised Code, captioned, "Manslaughter in the first degree," is as follows:

"No person shall unlawfully kill another. Whoever violates this section * * * is guilty of manslaughter in the first degree * * *."

While there is no issue presented in this appeal as to whether manslaughter in the first degree is a lesser included offense of murder in the second degree in these causes, somber reflection as to the facts and evidence creates doubt on the question. Manslaughter in the first degree in Ohio is divided into voluntary and involuntary manslaughter. Voluntary manslaughter is an intentional unlawful killing, while involuntary manslaughter is an unintentional unlawful killing. The trial judge instructed the jury in these causes on manslaughter in the first degree as follows:

"Manslaughter may be either voluntary or involuntary. It is voluntary when the killing is intentional but is done in the heat of passion due to great or adequate provocation, but not malicious in the sense of the word malicious as I have defined it to you. Such provocation must be such as to cause great passion in the mind of an ordinary man, and the act of killing must be done before the passion so caused has time to cool.

"Involuntary manslaughter is where the slayer was doing some unlawful act, other than such as are necessary to constitute murder in either degree, but without intention to kill and without malice and such unlawful act may have been the direct and proximate cause of the death."

The above instructions of the trial court to the jury on voluntary - manslaughter—intentional manslaughter—included such phrases as "heat of passion," "great and adequate provocation" and "before the passion so caused has time to cool." It is obvious that this instruction pertains and relates to a killing resulting from a sudden brawl or altercation. In these drag-racing causes there was a total lack of evidence which would warrant this instruction on voluntary manslaughter in the first degree.

The instructions to the jury in these causes on involuntary manslaughter—unintentional manslaughter—defined involuntary manslaughter as an unintentional killing by the slayer while engaged in an unlawful act. Under the law, an unlawful act amounts to a violation of a criminal law of the state or of a municipality.

In 1941, the General Assembly passed the Uniform Traffic Act and included therein a new crime, Section 6307-18, General Code, captioned "Manslaughter in the second degree." By the creation of this new crime in Section 6307-18, General Code, which is now Section 4511.18, Revised Code, the General Assembly set apart those acts of involuntary or unintentional manslaughter which arise from the violation of traffic laws. It should be noted here that all criminal laws in Ohio are statutory offenses enacted and created by the General Assembly. The creation of this new law pre-empted the specific crime of unintentional killing while operating an automobile in violation of law from the then existing crime of manslaughter in the first degree. We quote as follows from the opinion in State v. Hollenbacher, 101 Ohio St. 478, 483:

"The rule is familiar, and everywhere recognized, that a subsequent statute revising the whole subject-matter of the former act, and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former. * * * The question is one of legislative intent. *It must clearly appear that the Legislature intended not only to enact a new law but to enact it in place of the old one.*" (Emphasis added.)

By the creation of the new crime of manslaughter in the second degree, we conclude and find that the intent of the Gen-

eral Assembly clearly and manifestly was to remove and exclude traffic-violation deaths from the crime of manslaughter in the first degree. We hold that there is no evidence in these causes which warrants a charge of manslaughter in the first degree, either voluntary or involuntary.

Section 2505.21, Revised Code, under the caption, "Hearing on appeal," reads in part as follows:

"* * * Errors not * * * argued by brief may be disregarded, but the court may consider and decide errors which are not assigned or specified. * * *"

From the consideration of all the facts and circumstances in these causes, a cogent question arises as to whether an indictment charging the defendants with murder in the second degree and a jury verdict of guilty thereof are justified under the laws of this state. Section 2953.02, Revised Code, under the caption, "Review of judgments," reads in part as follows:

"The Supreme Court in criminal cases shall not be required to determine as to the weight of the evidence."

From *State* v. *Martin*, 164 Ohio St. 54, 57, we quote as follows from the opinion:

"It has been established, as a general policy, that the Supreme Court *will not* determine as to the weight of the evidence.

"This court may, however, examine the record with a view of determining whether the proper rules as to the weight of the evidence and degree of proof have been applied. See 3 Ohio Jurisprudence 2d 787, Appellate Review, Section 808; *Atkins* v. *State*, 115 Ohio St. 542, 155 N. E. 189.

"The burden rests upon the state to prove beyond a reasonable doubt every essential element of the offense charged. *State* v. *Urbaytis*, 156 Ohio St. 271, 102 N. E. 2d 248; *Scott* v. *State*, 107 Ohio St. 475, 141 N. E. 19.

"In sustaining the burden, probative evidence must be offered of every material element which is necessary to constitute the crime. *State* v. *Winterich*, 157 Ohio St. 414, 105 N. E. 2d 857."

In *State* v. *Urbaytis*, 156 Ohio St. 271, 277, from the opinion by Judge Zimmerman, we quote as follows:

"Although in criminal cases the Supreme Court is not required to and will not ordinarily weigh the evidence, it will

examine the record to ascertain whether the rule requiring proof of guilt beyond a reasonable doubt has been followed. See *Atkins* v. *State*, 115 Ohio St. 542, 155 N. E. 189, error dismissed, 274 U. S. 720, 71 L. Ed. 1324, 47 S. Ct. 590; *State* v. *Petro*, 148 Ohio St. 473, 76 N. E. 2d 355, 5 A. L. R. 2d 425.''

The two defendants herein were indicted under the provisions of Section 2901.05, Revised Code, captioned, ''Murder in the second degree,'' which reads in part as follows: ''No person shall purposely and maliciously kill another. * * *'' In the crime of murder in the second degree as charged against the two defendants, a necessary and essential element is that the defendants had a purpose or intent to kill. The term, ''purposely,'' as used in the statute, implies an exercise or use of the will; an intention, a design to commit a killing. The phrases, ''purposely kill'' and ''intentionally kill,'' are synonymous. The intent or purpose to kill must be present in the mind of the slayer at the time and place of the killing. Further, the act of killing must be performed to carry out or execute the intent or purpose to kill. The killing must result from the design, purpose or intent of the slayer to satisfy the requirement of ''purposely killing'' in murder in the second degree. Further, this essential element of ''purposely kill'' must be proved by the state, by evidence, beyond a reasonable doubt in the minds of the jury—all 12 of them—to justify a verdict of guilty.

The instructions of the Common Pleas Court to the jury in these causes on the question of purpose or intent to kill included the following:

''It is not always possible to prove intent by direct evidence for intent is a subjective fact; that is, it is within the mind of man. Therefore, in determining whether the state has proven intent to kill beyond a reasonable doubt, you may *look to all the surrounding circumstances* including the instrumentality used to cause death. I say to you that an automobile is not, in itself, a dangerous instrumentality, such as—for example— a gun would be. While an automobile is not regarded generally as a deadly instrumentality, it may become deadly if, in its operation, the operator wantonly, with full awareness on his part that the manner in which he operates it, will, in all probability, result in the death of some other person.

''I charge you that an intent to speed does not necessarily

mean an intent to kill, but if the driver of an automobile drives it in such a manner which could only be calculated to destroy life, and the driver is fully aware of that fact and of the fact that the probable consequences of his manner of driving will be to destroy the life of another, then the presumption in law would be that he intended the natural and probable consequences of his voluntary act, *unless the circumstances are such as to indicate the absence of any such intent.*
"\* \* \*

"It will be for you to determine from *all the surrounding circumstances*, as shown by the evidence, whether such purpose and intent to kill on the part of the defendant, Anderson [Butler], is to be so inferred." (Emphasis added.)

Regardless of the phrase, "surrounding circumstances," mentioned three times in the above instructions, the jury found beyond a reasonable doubt that these two defendants had a purpose and intent to kill.

We do not intend to engage in a lengthy analysis of the above instructions. It can, however, be logically concluded that these same instructions could be pertinent and relevant to any homicide caused by the operation of an automobile when the driver was fully aware that he was violating a traffic law, and that an accident and death might result. Traffic records are replete with homicides caused by drivers of automobiles who, *with full awareness,* intentionally violated a traffic law. These drivers, in all jurisdictions, are prosecuted under traffic manslaughter laws and are not charged with murder. We do not negate the possibility of an indictment and verdict of guilty of murder in the second degree in a case where the facts and circumstances prove beyond a reasonable doubt a specific purpose or intent to kill. A recent newspaper story reported that an operator of an automobile had deliberately attempted to run over a pedestrian standing by the roadside signaling the driver to stop. That manner of operation of an automobile clearly indicates an intention or purpose to injure or kill and would, if death resulted, justify a charge of murder in the second degree. A premeditated scheme or plan to kill a person by the operation of an automobile would even justify an indictment and a verdict of guilty of murder in the first degree.

Another essential element of the crime of murder in the

second degree is that the killing must be done maliciously. The distinction and contrast between murder and manslaughter lie in the element of malice. In murder in the first degree, it is essential that the state prove deliberate and premeditated malice. In murder in the second degree, the state must prove that the killing was done maliciously. Manslaughter in the first degree and manslaughter in the second degree are distinct and specific offenses under the law. They are not degrees of the crime of murder for the reason that the essential element of malice is not required in either degree of manslaughter.

Where the operator of an automobile intentionally and wilfully runs down or runs over a person on the highway, killing such person, then there is a purpose and intent to kill, plus the doing of the act maliciously. This would amount to murder in the second degree.

Rarely is the purpose and intent to kill, and to kill maliciously, in the mind of an operator of an automobile who runs a red light, disregards a stop sign, drives to the left of the center line, exceeds the speed regulations, or violates any other traffic law. Thousands of such violations of traffic laws occur daily and, fortunately, a vast majority of such violations do not cause accidents. Of the thousands of such violations occurring daily, a relatively small per cent result in traffic homicides.

The accepted rule that a person must be held to intend the natural and probable consequences of his act evolved from cases dealing with the use of dangerous weapons and instrumentalities, such as guns, knives, clubs and other lethal objects. A person using such deadly and destructive objects is held, under the law, to intend the natural and probable consequences resulting from the manner in which such objects were used.

However, to apply this rule of intent to the manner of use and operation of an automobile is to classify and catalog an automobile as a destructive, deadly and lethal instrument.

It was for this reason that the General Assembly created a special new law of manslaughter in the second degree, under which section of the law traffic-death offenders are prosecuted and convicted in this state.

Considering now the causes under consideration in this

appeal, does the evidence reach that high degree of probative force and certainty which the law requires to justify a verdict of guilty of murder in the second degree?

Anderson and Butler, in a tavern, engaged in a dispute concerning their automobiles and agreed to contest or race their cars on Route No. 44, a two-lane highway. Could there have been any intent to maliciously kill any person in the minds of these irresponsible and thoughtless young men as they agreed to drag race? Higgenbotham, a mutual friend of both Anderson and Butler, was invited and did ride as a passenger in Anderson's car. They then drove two and one-half miles on Paris Avenue from the tavern to Route No. 44 for the reason that Paris Avenue was too hilly and dangerous upon which to race, and even after turning onto Route No. 44 they went some distance over a high hill—Soap Hill—before they started to race. This evidence is very indicative to show they had no desire to have an accident resulting in injury or death to themselves or to anyone else. On Route No. 44 they started the race and, at high speeds, each passed the other at least once. Just prior to the collision involved, Butler was in the lead and Anderson was attempting to pass him, driving to the left of the center of the highway. A car approaching from the opposite direction appeared and was forced off the road. However, Anderson, Higgenbotham and Butler each testified that, as that car approached, Anderson pulled his car back to the right side of the road to avoid that collision. Anderson then immediately pulled out to the left and again attempted to pass Butler. When the two cars were side by side, the Romano automobile suddenly came over a crest in the road. In his testimony, Anderson did not remember what occurred after that. However, Butler and Higgenbotham each testified that, to avoid the oncoming Romano car, Anderson drove his automobile to the right and hit the Butler automobile first, before colliding with the oncoming car. Butler testified further that, as he saw the Romano car come over the crest in the road, he tried to accelerate his car so that Anderson could pull back behind him.

Without question, Anderson and Butler are equally responsible under the law for the killing of Philip Romano, which resulted from their combined violations of the several traffic laws

aforementioned in this opinion. However, as they engaged in the contest or drag race, the goal, motive or aim of each was to win or excel over the other. Each was determined to win the dispute over the merits of the automobiles involved, and each would risk a violation of any of the several traffic laws in an endeavor to win the race. However, while violating the several traffic laws, a purpose or intent to become involved in an accident cannot be inferred or attributed to either contestant, as an accident involving either or both cars would result in the car involved in the accident losing the race. An intent or purpose to maliciously kill by being involved in an accident is contrary and inconsistent with the motive or purpose to win the race. An intent or purpose to maliciously kill by being involved in an automobile accident is also contrary to the law of self-preservation and certainly neither of the defendants intended to be injured or killed in their efforts to win the race. Regardless of how reprehensible or culpable was their conduct, the reckless, negligent and heedless operation of their automobiles does not reach the high standard which the law prescribes for murder in the second degree—purposeful, intentional and malicious killing.

We find that the evidence adduced and presented was such that it should have left a reasonable doubt in the minds of the jury that the defendants purposely and maliciously killed Philip Romano. This court holds, therefore, that the evidence against the defendants did not attain to that high degree of probative force and certainty which the law requires to sustain a verdict of guilty of murder in the second degree. The finding of the Court of Appeals on that issue is, therefore, reversed.

There would be no reason or purpose for this court to remand these causes for a new trial. Under Section 2945.79 (D), Revised Code, this court is authorized to modify a verdict if the evidence shows that the defendant is not guilty of the degree of crime for which he was convicted, but is guilty of a lesser included offense. The evidence in these causes, beyond any reasonable doubt, proves that the defendants, either as principal or aider and abettor, while engaged in violations of traffic-law Sections 4511.251, 4511.21, 4511.25, 4511.27 and 4511.29, Revised Code, unintentionally killed Philip Romano. They are both

guilty of manslaughter in the second degree as provided in Section 4511.18, Revised Code.

In summary, we affirm the finding of the Court of Appeals that manslaughter in the second degree is a lesser included offense. The judgment of the Court of Appeals is reversed in both causes as to the finding that the evidence sufficiently supports a verdict of murder in the second degree. The verdict and judgment of the Court of Common Pleas in both causes is modified by reducing the verdict of murder in the second degree to the lesser included crime of manslaughter in the second degree as provided in Section 4511.18, Revised Code. The causes are remanded to the Court of Common Pleas with instruction to order the bill of particulars in both causes amended as is provided in Section 2941.30, Revised Code, to allege violations by both defendants of the specific traffic laws aforementioned in this opinion. Further, the Court of Common Pleas is instructed to resentence the defendant in each cause under Section 4511.99 (A), Revised Code, which provides the penalty for the crime of manslaughter in the second degree.

*Judgment reversed.*

TAFT, C. J., HERBERT, SCHNEIDER and BROWN, JJ., concur. MATTHIAS and O'NEILL, JJ., dissent.

STRAUB, J., of the Sixth Appellate District, sitting for ZIMMERMAN, J.