Submitted on record and briefs April .6, affirmed May 21,
petition for rehearing denied June 23, 1970. Petition
for review denied by Supreme Court
August 3, 1970

# STATE OF OREGON, *Respondent, v.*
# MARVIN GLENN ANDREWS, *Appellant.*

469 P2d 802

Gary D. Babcock, Public Defender, Salem, for appellant.

Gary D. Gortmaker, District Attorney, Salem, for respondent.

LANGTRY, J.

The defendant, while an inmate of the Oregon State Penitentiary, attacked another inmate with a knife and wounded him. He was convicted by a jury of attempted first degree murder. In this appeal he alleges three errors: (1) that the jury was instructed that it could find the defendant guilty by ten or more of its number; (2) that a 10-year sentence was imposed to run consecutively to two life sentences which the defendant was serving at the time of conviction; (3) that the court did not instruct the jury that the defendant could be found guilty of the lesser included crimes of attempted second degree murder or attempted voluntary manslaughter.

(1). This assignment has been decided contrary to defendant's contention in *State v. Gann*, 254 Or 549, 463 P2d 570 (1969).

(2). In *State v. Jones*, 250 Or 59, 440 P2d 371

(1968), it was held that a trial court has inherent power to impose concurrent or consecutive sentences in appropriate situations. If the defendant's argument were correct, no confinement penalty could be imposed upon a defendant for any crime he commits while serving a life term. The negative effect of consecutive sentences upon such a defendant's attaining parole is a deterrent to crime in penal institutions. For these reasons, among others, the imposition of consecutive terms, which, if carried to their conclusion would go well beyond a defendant's possible life span, is common in cases of this nature, and is approved by appellate decisions. *State v. Boag*, 104 Ariz 362, 453 P2d 508 (1969); *The People v. Heirens*, 38 Ill2d 294, 230 NE2d 875 (1967); *The People v. Vraniak*, 5 Ill2d 384, 125 NE2d 513, cert den 349 US 963 (1955); *Seibert v. State*, 457 P2d 790 (Okla Crim 1969).

(3). No request was made for an instruction on lesser included offenses, nor was exception taken to the failure to so instruct. In *State v. Olson*, 1 Or App 90, 459 P2d 445 (1969), where the charge was assault with intent to kill under ORS 163.280, we held that even though no request was made or exception taken we would, nevertheless, consider the court's failure to instruct on lesser included offenses under Rule 46 which provides "* * * this court reserves the right to take notice of an error of law apparent on the face of the record." Rule 46 is the same for this court and the Oregon Supreme Court.

In *Olson* we relied upon *State v. Collis*, 243 Or 222, 413 P2d 53 (1966); *State of Oregon v. Nodine*, 198 Or 679, 259 P2d 1056 (1953); and *State v. Butler*, 11 Ohio St 2d 23, 227 NE2d 627, 21 ALR 3d 102 (1967). The quotation in *Olson* from *State v. Butler*, supra, was

taken by the Ohio Supreme Court from the earlier Ohio case *State v. Loudermill*, 2 Ohio St 2d 79, 206 NE2d 198 (1965). *Loudermill* is not in point, and, hence, the language quoted in *Olson* was not appropriate to that decision. In *Loudermill* both the prosecutor and defense counsel had requested an instruction on a lesser included offense which the court refused to give. In *Butler*, there was a request for a similar instruction which was also refused.

In *Olson* we noted that in *Nodine* no request was made by the defendant to instruct on the lesser offense of involuntary manslaughter. But in *Nodine*, defendant excepted to the failure of the court to give such an instruction so that the matter was actually called to the court's attention. *Nodine* was a case of first degree murder before the death penalty therefor was abolished in Oregon. The Court took cognizance of the error in *Nodine* under what is now Rule 46. It said:

> "* * * [I]n a case where a human life is at stake, we are not prepared to apply a procedural requirement of this kind [that a request must be made for a lesser included offense instruction if error is to be predicated on failure to give it], salutary though it may be, in all its strictness * * *." *State v. Nodine*, 198 Or at 687.

As we now review *Nodine* and *Olson,* we question whether the application of Rule 46 ever has been appropriate in a situation such as that presented here and in *Olson.*

■ In *Olson* the charge was assault with intent to kill. ORS 163.280. Punishment upon conviction could be imprisonment "for life or for any lesser term * * *." The caption of the indictment in the case at bar lists

the sections of the Code under which the charge is made as "ORS 161.010 and 163.090." ORS 163.090 was repealed in 1957. What was obviously intended was to charge a felonious attempt to kill under ORS 161.090. Because the use of ORS 161.090 is limited by its terms to attempts at crimes not covered by any other statute, ORS 161.090 cannot be the basis for an indictment in this case. This is because another statute, ORS 163.280, specifically makes unlawful the charge made in the body of the indictment in this case. However, the language of the indictment brings the charge adequately under ORS 163.280, and we will so view it.

We erred in *Olson* when we implied that the possible maximum sentences in *Olson* and *Nodine* were "identical," *State v. Olson*, 1 Or App at 94. And we erred in the same context when we said the charge in *Collis*, supra, was first degree murder. The charge there was assault with intent to kill. We conclude that the use of Rule 46 in *Nodine* was not authority for its use in *Olson*.

Our present appraisal of the effect of *Nodine* on the instant case is consistent with *State v. Abel*, 241 Or 465, 406 P2d 902 (1965), where the Court approved the trial judge's refusal to give an additional instruction when exception was taken after the case was submitted to the jury.

> "* * * [I]t is still the rule in this state in criminal as in civil cases that 'a question not raised and preserved in the trial court will not be considered on appeal:' *State v. Braley*, 224 Or 1, 9, 355 P2d 467. The rule is relaxed in exceptional circumstances, *particularly* in *what were formerly capital cases* * * *.
>
> "* * * * *
>
> "* * * The rule of the court referred to [that

requested instructions must be submitted in writing before the jury charge] is not only a reasonable one, but it accords with the general rule as enunciated in *State v. Nodine*, 198 Or 679, 687, 259 P2d 1056: 'Considerations of orderly procedure and of fairness to the state and the trial judge suggest that the matter be brought to the attention of the judge and of opposing counsel before the commencement of the charge.' In the *Nodine* case, which was a prosecution for first degree murder, we allowed an exception to the rule, but there are no circumstances present in this case which call for a similar course. There was no error in the ruling." (Emphasis supplied.) *State v. Abel*, 241 Or at 467, 474.

The opinions both in *Nodine* and *Abel* were written by Mr. Justice LUSK.

The observations in this opinion about our holding in *Olson* are consistent with what we said in *State v. Miller*, 2 Or App 353, 467 P2d 683, Sup Ct. *review denied* (1970).

"* * * In *Nodine*, a murder prosecution, discussing the failure to request instructions, the court stated:

'Nevertheless, in a case where human life is at stake, we are not prepared to apply a procedural requirement of this kind, salutary, though it may be, in all its strictness * * *.' 198 Or at 687.

The procedural rule requiring instructions be requested was not followed. In *Olson* we held the same reasoning applied in attempt cases because the punishment was identical. It was not our intention in *Olson* to extend the holding in *Nodine* to other than murder cases. Indeed, whether the holding in *Nodine* remains viable now that the death penalty has been abolished is a question worthy of consideration in an appropriate case."

*Olson* was not what was formerly a capital case. Further, it now seems doubtful to us that there were other "exceptional circumstances" which merited application of Rule 46. As already indicated, we conclude that we were in error in that case. The case at bar is not what was a capital case at the time *Nodine* was decided, and it has no other exceptional circumstances which merit application of Rule 46.

In the instant case no request for an instruction on a lesser included offense was made prior to charging the jury, and, therefore, we will not consider the alleged error. This is for the salutary procedural reasons mentioned by Mr. Justice LUSK in *Nodine* and *Abel.* It also is because the defendant in any such case, may, as a trial tactic, forego requesting an instruction on a lesser included offense. He thus may gamble on the possibility that the jury will acquit him of the major offense, although it might, if given the opportunity, find him guilty of a lesser included one. If he loses his gamble and is found guilty of the major offense, and were we to adhere to our former decision in *Olson,* the defendant could get another trial with attendant delay, possible loss of evidence, and injustice to the prosecution.

If we were to hold that it is the duty of the trial judge to detect a situation where the lesser included offense instruction should be given, and give it, the defendant, if he is taking a chance on all or nothing, can then complain, regardless of whether the complaint might be justifiable, that the court is interfering with his trial strategy and claim that as error. The defendant is entitled to but one fair trial and we find that he had it in the case at bar.

Affirmed.

FORT, J., specially concurring.

If I correctly understand the majority opinion, it holds that application of Rule 46 is no longer possible in Oregon in any criminal case in which a defendant has failed to request instructions concerning an included offense unless the crime charged is a capital offense. Together with *State v. Miller*, 2 Or App 353, 467 P2d 683, Sup Ct *review denied* (1970), it strongly suggests that since the death penalty has been repealed it logically follows that the rule of *State v. Nodine*, 198 Or 679, 259 P2d 1056 (1953), has died with it. I am unable to accept that conclusion in view of the fact that in *Nodine* the jury's verdict "of murder in the first degree with recommendation of life imprisonment" under the then existing law required imposition of a life sentence. § 23-411, OCLA.

It is not clear to me which of the following rules the majority is adopting:

1) Rule 46 will not henceforth be applied by this court in criminal cases to consider the question of a failure to instruct on lesser included offenses when no such instructions were requested by the defendant and no exception to such failure taken by him.

2) Rule 46 will not henceforth be applied by this court in criminal cases to consider the question of a failure to instruct on lesser included offenses when no such instructions were requested by the defendant.

3) Rule 46 will not henceforth be applied by this court in criminal cases to consider the question of a failure to instruct on lesser included offenses when no such instructions were requested by the defendant and no exception to such failure taken, with the exception only of capital cases.

I cannot accept the conclusion of the majority that

we erred in *State v. Olson*, 1 Or App 90, 459 P2d
445 (1969), in stating that the possible maxi-
mum sentences were identical in *Nodine* and
*Olson*. In *Nodine* the verdict returned by the jury was
"murder in the first degree with recommendation of
life imprisonment." 198 Or at 682. Under § 23-411,
OCLA, the maximum sentence which could have been
imposed then was life imprisonment, the identical
maximum imposable in *Olson*.

For the same reason, I cannot accept the sugges-
tion, both here and in *State v. Miller*, supra, that since
the death penalty has been repealed in Oregon the rule
of *State v. Nodine*, supra, is no longer "viable."

If the majority intends by this opinion effectively
to foreclose the possibility of review for failure to
instruct on included offenses unless timely request is
made therefor, it may simplify our work on direct
appeals, but I apprehend the difficulties may well re-
appear in cases asserting a challenge to the adequacy
of counsel.

Certainly I agree fully with the court that games-
manship, in the hope of getting, if the need arise, "a
second bite at the apple" has no proper place in the
judicial process. But the objective of that process is,
after all, a just result within the law. It is neither
difficult nor improper for the trial court, when re-
quested instructions on included offenses are not sub-
mitted, and the evidence warrants it, to inquire of the
defendant what his position is concerning such matter.
This is consistent with our statement in *Olson*:

> "It is important to note in this connection that
> there was here no express waiver by defendant or
> the state of the right to have the included offenses
> submitted to the jury. Thus, we are not faced with

the question of an intelligent waiver of a known right."

When under such circumstances a defendant refuses to take a position as to the inclusion thereof, this in my view would constitute an intelligent waiver.

For the jury effectively to exercise its power as "the judges of the effect * * * of evidence addressed to them" (ORS 17.250), the court is required to "state to them all matters of law which it thinks necessary for their information in giving their verdict." (ORS 17.255(1), made applicable to criminal cases by ORS 136.330.)

Clearly then the court may on its own motion, where the evidence warrants it, give instructions on included offenses, whether or not requested.

It seems to me that the very purpose of Rule 46 is to leave the door open in any action at law for review of errors "apparent on the face of the record" and that this applies as much to the type of problem presented here as to any other.

The majority opinion here does not hold that the circumstances in the case at bar either were or were not exceptional. It does not discuss them at all.

The court now carves out of Rule 46 a small area relating to the giving of instructions upon included offenses. It treats the cases falling into this category, without clear definition of the category created, as a matter of law unentitled to the application of Rule 46, with the possible exception of capital cases.

In *Olson*, here reversed, we approached the question of when cases of this type would be considered under Rule 46 as determined in the final analysis by the facts. I believe this is not only consistent with the

intent of Rule 46, but it is more in keeping with the objective of a just trial.

In my view it is necessary to consider the record to determine whether in this case there was present an "error of law apparent on the face of the record" sufficient to warrant our exercising "the right to take notice" of it as provided in Rule 46.

· The defendant here was going through the breakfast "chow" line in the dining room of the penitentiary. He was carrying concealed on his person a homemade knife with an eight to ten-inch blade sharpened on both sides and pointed at one end. This was forbidden to inmates under penitentiary regulations. The defendant testified another inmate who passed him in the "chow" line made a derogatory remark to him. No other conversation took place between them, and the other inmate passed on down the "chow" line away from him. He then testified that about 30 seconds later, "I ran after him. I wanted to kill him." He drew his knife and stabbed the inmate in the throat from the side without uttering a word. His only claim is that the alleged derogatory remark made him lose his "cool."

. The record does not contain the arguments of counsel. Thus it is impossible to tell whether defendant presented any argument or analysis indicating either awareness of or reliance upon any lesser included offense, or if he expressly or by implication waived such consideration.

Unlike *Olson*, this record then does not in my view present such circumstances as would warrant the application of Rule 46. I therefore concur in the result of the majority opinion.