Argued April 29, affirmed May 28, petition for rehearing denied
July 29, 1970, petition for review denied by Supreme
Court September 22, 1970

# STATE OF OREGON, *Respondent, v.*
# RONALD WATIE CHARLES, *Appellant.*

469 P2d 792

*Ortis W. Goakey*, Klamath Falls, argued the cause and filed the briefs for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

FOLEY, J.

Defendant was convicted by jury of second degree murder and appeals from a judgment sentencing him to a term not to exceed 14 years' imprisonment.

On the evening of November 20, 1968, defendant Charles and a companion were visiting a Mr. Jocks at

his residence in Klamath Falls. Deceased, a Negro Air Force Crew Chief named Robert Wayne Torrence, and two companions drove up to an adjoining residence occupied by defendant's children and ex-wife, Karen Charles. While Torrence and one of his companions were standing on the porch of Mrs. Charles's house, defendant went out on the porch of the Jocks's residence and called Torrence. When Torrence did not respond, defendant called "Hey, nigger!" or something similar. There is a conflict as to exactly what then occurred, but subsequently Torrence advanced on the defendant, assuming what several witnesses described as a karate stance and threatening to tear defendant's heart out. Defendant ran into the Jocks's house, picked up a 30 caliber rifle which was standing next to the door of the living room and returned to the porch where he stood for several seconds. Testimony conflicts as to whether Torrence was continuing to advance during this interval or was turning away. Defendant fired one shot and, after an interval varying, according to the testimony, from almost nothing to five seconds, fired at least twice more. Three bullets from this rifle were found in Torrence's body. Two of the bullets had entered from the left side and one from the back. At his arrest immediately following the shooting and throughout the trial, defendant claimed to have acted in self-defense. The jury rejected defendant's claim of self-defense and convicted him of second degree murder.

■ Defendant requested and the court gave instructions on first and second degree murder and voluntary manslaughter. No request was made for an instruction on involuntary manslaughter and none was given. Following the court's instructions at the time for taking exceptions, defendant's counsel took an exception

which appeared to be a criticism of the instruction on voluntary manslaughter. Although in one place the words "involuntary manslaughter" were used, the exception did not include any request to instruct on involuntary manslaughter. The exception mentioned was as follows:

"[DEFENSE COUNSEL:] * * * We would further except to the Court's having failed to include in the definition of manslaughter as a material allegation the duty of the State to establish the fact that the act was done unlawfully, and that was not included as a material allegation, and it's our contention that the term 'unlawfully' even though perhaps the term 'feloniously' may not be necessary, it would have to be included in the term or the definition of involuntary manslaughter. It is our feeling that the material allegations ought to include as included in the indictment, the term 'unlawfully,' because if the act was not committed unlawfully, it was not voluntary manslaughter. * * *",

and after reinstruction on second degree murder and manslaughter,

"[DEFENSE COUNSEL:] * * * I would take the same exceptions to those two instructions previously taken, and particularly to the instruction on manslaughter, where the Court did not embody —did not tell the jury that the act must still be done unlawfully."

The purpose of an exception is to apprise the trial court of any error in the instructions so that he may correct the error. We hold that the quoted language does not constitute an exception by the defendant which would suggest to the trial court an error in failing to instruct on involuntary manslaughter.

Defendant's principal assignment of error is the

failure of the court to instruct the jury on the lesser included offense of involuntary manslaughter. Since, as mentioned, the defendant did not request an instruction on involuntary manslaughter, this assignment of error is not properly preserved. *State of Oregon v. Nodine*, 198 Or 679, 685-87, 259 P2d 1056 (1953); *State v. Andrews*, 2 Or App 595, 469 P2d 802, Sup Ct *review denied* (1970). It will be considered, then, only if this is a proper case in which to invoke court Rule 46, which provides that this court "* * * reserves the right to take notice of an error of law apparent on the face of the record." In order to determine whether this case merits Rule 46 attention, it is necessary to consider whether there are

> "* * * exceptional circumstances, particularly in what were formerly capital cases where 'the court, upon an examination of the entire record, can say that the error is manifest and that the ends of justice will not otherwise be satisfied:' *State v. Avent*, 209 Or 181, 183, 302 P2d 549." *State v. Abel*, 241 Or 465, 467, 406 P2d 902 (1965).

The indictment herein charged first degree murder, so this case is what was formerly a capital case. A capital case is one punishable by death. Since 1964, when the death penalty was abolished in Oregon and a mandatory life sentence substituted therefor, the only difference in the penalty for one receiving the life sentence for first degree murder and a life sentence for other offenses (treason, kidnapping, robbery, etc.) is that the murderer is not eligible for parole until he has served 10 years, ORS 144.230(1), whereas the others receiving a life sentence are subject to consideration for earlier parole. As a result there is no longer a marked distinction between "what were formerly capital cases" and other cases involving long prison terms,

such as consecutive term-of-years sentences for multiple offenses, or habitual criminal life sentences, where the likelihood of parole is remote. The reason, therefore, to find "exceptional circumstances" in "what were formerly capital cases" has all but disappeared.

■ We then search elsewhere for "exceptional circumstances." The defendant was convicted of second degree murder which carries a maximum penalty of 25 years. The maximum penalty for involuntary manslaughter is 15 years. Defendant received a sentence of 14 years, which is less than the maximum for the lesser included offense which he now claims should have been submitted to the jury. Rule 46 is designed to prevent a miscarriage of justice where manifest error is disclosed to the court on a review of the record and the ends of justice will not be satisfied unless this court acts thereon. This is not such a case.

Under the testimony presented, including the defendant's retreat into the house to get the gun, the return with it, the firing by defendant of at least three bullets, two of which entered deceased's side and one his back, there was abundant evidence supporting the conviction by the jury of second degree murder, and from which they reasonably could even have found first degree murder. This also militates against the use of Rule 46, and at the same time suggests that defendant's claim of error in the denial of his motion to remove first and second degree murder from the consideration of the jury is without merit.

■■ Defendant also claims the court erred in reinstructing the jury, upon the jury's request, on second degree murder and voluntary manslaughter. Whether to reinstruct the jury on such an occasion on particular

points of law rests within the discretion of the trial court. *State of Oregon v. Vaughn*, 200 Or 275, 277, 265 P2d 249 (1954); *State v. Flett*, 234 Or 124, 129, 380 P2d 634 (1963). There was no abuse of discretion here.

Defendant's other assignments of error are without merit and do not justify a discussion.

Affirmed.