THE STATE OF OHIO, APPELLEE, *v.* PALFY, APPELLANT.

(No. 5950—Decided June 28, 1967.)

Mr. James V. Barbuto, prosecuting attorney, and Mr. Stephan M. Gabalac, for appellee.

Mr. John A. Bailey and Mr. Max W. Johnstone, for appellant.

DOYLE, J. In this case, we are asked to reverse and set aside a state of Ohio conviction of the appellant, John Palfy, Jr., for the crime of murder in the first degree.

Pursuant to indictment by a grand jury, and a plea of not guilty thereto, the accused, with the advice of counsel, duly waived a trial by jury and, under the statutes extant, stood trial before a panel of three Judges of the Court of Common Pleas, which court, at the conclusion of the trial, adjudged him guilty of murder in the first degree, recommended mercy, and sentenced him to life imprisonment in the penitentiary.

The appeal to this court, from the judgment set forth above, presents the following asserted errors. They are claimed to be prejudicial and, therefore, to entitle the appellant to a new trial. They are:

"1. The judgment of the court is not sustained by sufficient evidence:

"(a) The state did not adduce proof to show the defendant guilty beyond a reasonable doubt.

"(b) The state did not present evidence to support the judgment of the court.

"2. The court erred in overruling the defendant's motion for a mistrial.

"3. The judgment of the court is contrary to law."

The appellant contends that the state failed to prove "intent" to kill, which is said to be an essential element of the crime. To this claim, we now direct attention.

The evidence shows that on July 29, 1966, this appellant, John Palfy, Jr., and four associates, Ray Pemberton, Ray Kling, Vernon Boyd, and Merle Pemberton, came to Summit County by automobile from an adjoining county to borrow money from a friend of Ray Pemberton. Money was borrowed from the friend and, when the loaner asked about repayment, he was told by Ray Pemberton, in the presence of all his companions, that they would "roll" some people, obtain money and repay the loan. They proceeded to visit several bar rooms looking for prospective victims to "roll," and, when riding from one bar to another, they observed a young man named Eric Silket walking on the sidewalk with a package under his arm. Ray Kling and Vernon Boyd alighted from the car, each wearing metal knuckles, and, after viciously assaulting him with their armored fists, drawing blood from their victim and seriously injuring him, they stole the merchandise in the package, placed it in the car, and resumed the tour of violence with their companions. Continuing to cruise the streets looking for another victim, they stopped at several bars, one of which was called the City Bar. Here, the appellant, Palfy, Ray Pemberton and Ray Kling, met a bar customer named Ivan Ward, who agreed to travel with them to the Glass Bar at another location. When the five companions, and their most recent acquaintance, reached the vicinity of the bar room, the new victim, Ward, was severely beaten and assaulted by all five of the hoodlums, and robbed of his money, after which he was dropped from the car, placed on the ground, and again severely beaten. Metal knuckles were also here used. This victim spent seven days in a hospital as a result of his misadventure.

It further appears in the evidence that by this time the clothing of this appellant, and others, was saturated with the blood of their prey so they left their quarry, Ward, lying on the ground, and continued on to a laundromat, where they used the machines to wash their clothes, including a sweater of this appellant, Palfy. The following morning, Ward's wallet, with various personal papers, was found in the toilet of the laundry, where the wallet had been left by one of the members of the gang, after it had been stripped of money.

The hoodlums left the laundromat in their automobile, in search of other victims, and, as they cruised in the Kenmore

area of Akron, Summit County, they observed one Paul Morlan walking on the sidewalk in the immediate vicinity of his home. He was observed, in discussion, as an easy one to rob. Ray Pemberton and Ray Kling alighted from the car, and, armed with metal or brass knuckles, accosted Morlan. Morlan was robbed of his money and, in an accompanying altercation, Ray Pemberton intentionally killed him by stabbing him a number of times with a knife. The appellant, Palfy, was, in this period of time, the driver of the car. After a discussion among the gang of the amount of loot, and whether the license placed on the car should be transferred, they drove away, and soon thereafter were arrested by police officers who had been alerted to the killing of Paul Morlan.

It is argued that, although Paul Morlan was purposely killed by Ray Pemberton, there is no evidence that Paul Morlan was purposely killed by John Palfy, Jr. Specifically, the appellant says: "We do concede that the defendant knew that the other individual besides Ray Pemberton who participated in the attack on Paul Morlan, which attack resulted in the death of Paul Morlan, did have a pair of 'brass knuckles.' The record, however, is absolutely silent as to any attack on Morlan by the use of 'brass knuckles,' and, in fact, the record is definite that the death of Morlan was by the knife which Ray Pemberton had, and which knife was unknown to defendant Palfy."

The brass knuckles heretofore mentioned were owned at one time by the appellant, and were given to another member of the gang prior to the time of the events preceding the murder. The evidence shows beyond peradventure that they were being used in the robberies with the full knowledge and acquiescence of the appellant; they were a part of the equipment of the gang to be used to carry on the robberies to a successful conclusion. That the appellant was conscious of the fact that their use could inflict great bodily harm, or even death, is evidenced by his own statement, to one of his companions as the companion was beating and mutilating the victim, Ward, to stop, that he would kill him.

The statute relating to murder in the first degree is contained in Section 2901.01, Revised Code, and, in pertinent part, is as follows:

"No person shall purposely, and either of deliberate and

premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglarly, kill another.''

The ''aiders and abettors'' statute is Section 1.17, Revised Code, and reads:

''Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.''

It is obvious that the appellant has stood trial on a charge of first degree murder by virtue of the provisions of the latter statute, and it is equally obvious that evidence of a purpose to kill must appear to exist before a conviction of first degree murder can be sustained.

We understand the law to be, in respect to an aider and abettor under the statute, that where a person engages himself as a participant with others to commit unlawful acts by the use of deadly weapons, or force and violence of such character as would reasonably be expected to cause the death of another, or if the conspired unlawful act, and the manner of its performance, would be reasonably likely to cause death, each participant in the conspiracy is, under the statute, equally guilty with the principal killer, even though the aider and abettor had no knowledge of the actual weapon used by the killer.

In the instant case, there is no evidence establishing knowledge on the part of the appellant that the killer possessed the knife that was used to kill Morlan. He did know, however, that each robbery was accompanied with great violence upon the person of the victims, and that brass knuckles were generally used.

It is well established that one may be presumed to intend results which are the natural, reasonable and probable consequences of his voluntary acts. *State* v. *Farmer*, 156 Ohio St. 214. In applying the principle to the case before us, we find that the evidence is sufficient for a finding, beyond a reasonable doubt, that the appellant engaged in a common design with others to rob persons, including the deceased, by the use of force, violence, and weapons (brass knuckles), and that the murder of Paul Morlan was a natural and probable consequence of the execution of the common design, and that the common design creat-

ed such circumstances as would, in all probability, endanger human life. The case of *State* v. *Doty*, 94 Ohio St. 258, is authority for finding an aider and abettor guilty of homicide, even though he had no knowledge of the specific weapon used in the killing. The law there pronounced in the second paragraph of the syllabus, we recognize as authority in this state and, for purposes of emphasis, a part of it will be incorporated herein:

"2. * * * if the conspired unlawful act and the manner of its performance would be reasonably likely to produce death, each conspirator is equally guilty with the principal offender, as an aider and abettor in the homicide, although such aider and abettor was neither present nor had knowledge of the physical killing or of the weapon used."

We hold, therefore, that the evidence was sufficient for the trial court to have found, beyond a reasonable doubt, that the appellant, John Palfy, Jr., as an aider and abettor under the statute, intentionally killed Paul Morlan.

A careful examination has been made of each and every assignment of error, and we find none prejudicial to the rights of the appellant. The evidence, including the testimony of witnesses, and exhibits, and the overwhelming force of the rational inferences to be drawn therefrom, prove, beyond a reasonable doubt, the commission of a shocking crime of murder in the first degree. The claimed denial of constitutional guarantees simply is not tenable.

*Judgment affirmed.*

BRENNEMAN, P. J., and HUNSICKER, J., concur.