John PALFY, Jr., Petitioner-Appellant,

v.

Harold J. CARDWELL, Warden,
Respondent-Appellee.

No. 20999.

United States Court of Appeals,
Sixth Circuit.

Sept. 22, 1971.

---

Leo J. Conway, Columbus, Ohio, for respondent-appellee; William J. Brown, Atty. Gen., William E. Dunlap, Jr., Asst. Atty. Gen., Columbus, Ohio, on brief.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

Appellant, John Palfy, Jr., was convicted of first degree murder as an aider and abettor. Having exhausted his remedies in the state courts of Ohio, he filed a petition for the writ of habeas corpus in the court below. Following an evidentiary hearing that court denied relief and this appeal ensued. We conclude that no constitutional right of appellant was violated, and accordingly, we affirm the judgment of the district court.

On the night of July 29, 1966 Ray Pemberton, Ray Kling, Vernon Boyd, and Merle Pemberton drove to the home of John Palfy, Jr., and he joined the four men for the evening. They proceeded to drive around the Akron, Ohio area drinking beer. Subsequently they stopped at a gas station where Ray Pemberton borrowed five dollars with which to purchase additional beer. During the next few hours, members of the group, with varying degrees of participation, "rolled" [robbed] three persons. The first two victims were severely beaten with brass knuckles. The third victim, Paul Morlan, was attacked by Ray Pemberton and Ray Kling while the other men waited in their car. During this robbery, Morlan was stabbed numerous times and died as a result of the stab wounds. Later that evening the five men were arrested.

At the state court trial, two attorneys were appointed to represent appellant. Trial by jury was waived in writing and appellant was tried by a three-judge court in February, 1967. At trial, the following facts were stipulated. On July 29, 1966 Ray Pemberton secured a loan of five dollars at an Akron gas station and stated in the presence of appel-

E. Bruce Hadden, Columbus, Ohio (Court appointed), for petitioner-appellant; Campbell & Hadden, Columbus, Ohio, on brief.

lant that the five companions would "roll some guys" to repay the loan. Two of the men carried brass knuckles which appellant had a month earlier given to one of the participants. Following the incident at the gas station, Eric Silket was attacked by Ray Kling and Vernon Boyd and was beaten with brass knuckles and robbed. Then appellant and two of the other men temporarily befriended Ivan Ward at a bar and offered to take him to another bar. Near their planned destination, Ward was beaten by all five men and robbed. Ward was hospitalized seven days as a result of the beating. The five participants were later seen at a laundromat washing blood from several articles of clothing, and Ward's wallet was found at the laundromat the next day. Shortly after leaving the laundromat, Ray Pemberton and Ray Kling attacked and robbed Paul Morlan. Pemberton purposely killed Morlan by stabbing him numerous times. Three witnesses who identified Pemberton and Kling as Morlan's assailants chased the two men to their car. One of the witnesses took the license number of the vehicle as it was driven away. The five men were subsequently arrested by Akron police who found a knife and brass knuckles in the car. Also stipulated at trial were the following facts. First, appellant Palfy attempted to pull Kling from Ivan Ward and told Kling to stop beating Ward or he would kill him. Secondly, appellant Palfy had not met Ray Pemberton, the actual killer, prior to the night of the killing and did not know that any of the participants carried a knife.

In addition to the stipulations, the state introduced into evidence numerous exhibits including pictures of the rear seat of the car showing the knife as it was found by police and showing blood spots resulting from the beating of Ward. Also Merle Pemberton testified to the events of the evening and in particular to appellant's participation.

The appellant was convicted of first degree murder as an aider and abettor and was sentenced to life imprisonment.

The statute relating to first degree murder, Sec. 2901.01, Revised Code of Ohio, reads in relevant part:

"No person shall purposely * * * in perpetrating * * * robbery * * * kill another."

Section 1.17, Revised Code of Ohio, defines an aider and abettor as follows:

"Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

Appellant's first contention is that he was denied effective assistance of counsel because, without his consent, his counsel stipulated into evidence facts sufficient to find him guilty of first degree murder. Appellant maintains that he never withdrew his plea of not guilty, and yet trial counsel stipulated facts upon which a finding of guilt could be sustained.

 Clearly, counsel cannot plead the accused guilty against the defendant's desire. White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945). Nor can counsel stipulate without defendant's consent facts establishing the guilt of the accused. Achtien v. Dowd, 117 F.2d 989 (7th Cir. 1941). But a review of the entire record in the instant case reveals that neither situation occurred here. At the hearing in the district court, both appellant and one of his trial counsel testified that prior to trial they had approximately twelve discussions concerning trial strategy and the fact that stipulations were going to be made. Appellant testified that he understood that his counsel believed the best possible defense to be lack of intent and that he agreed to this defense. Trial counsel testified that each stipulation had been thoroughly and specifically discussed with appellant prior to trial. Furthermore, the trial transcript reveals that the proposed stipulations were read and that the presiding judge asked appellant if he understood that he was admitting everything stated in the stipulations. The appellant objected to a minor part of one stipulation concerning the

extent to which he drove the car. He also differed with another minor point which had in fact only been stated by the prosecutor in the opening remarks. At this point, one of the appellant's attorneys reminded him that he did not have to agree to any of the stipulations. During a short recess, the disputed details were corrected. Then the presiding judge stated that the defendant must understand and agree to the stipulations and specifically waive in open court his right to be confronted with the witnesses against him. Appellant then agreed to speak only through his counsel. The stipulations were then read into the record and accepted by counsel. Based on these facts, we conclude that appellant knew the effect of the stipulations and intelligently assented to them.

■ That appellant gave his consent to the stipulations and to the strategy suggested by his attorneys does not completely dispose of the allegation of ineffective counsel. If what was done or not done by his counsel made the trial a farce and a mockery of justice shocking to the conscience of the court, then appellant would have been denied effective counsel. Holnagel v. Kropp, 426 F.2d 777 (6th Cir. 1970). But the burden on appellant to establish this claim is a heavy one. Holnagel v. Kropp, *supra.*

■ Trial counsel in the instant case were in a difficult position. Two of the five participants had been tried and both were found guilty of first degree murder. One was sentenced to death and the other was sentenced to life imprisonment. Witnesses to the murder of Paul Morlan had previously testified to the gory incident which left blood running down the street for over 150 feet. The defense attorneys had no doubt that the state would again present a convincing and inflammatory case. They also wished to keep appellant's previous criminal record out of evidence. The attorneys therefore decided to use the stipulations.

■ The substance of trial counsel's defense was that Palfy lacked an intent to kill. Such an intent is a necessary element of first degree murder in Ohio even when the killing occurs in the perpetration of a robbery. State v. Farmer, 156 Ohio St. 214, 102 N.E.2d 11 (1951). Stipulated facts indicated that appellant had attempted to stop the beating of Ivan Ward to prevent a killing and that appellant did not know that any of his companions carried a knife. Defense counsel argued that these stipulations showed that Palfy intended only to rob some people and had no intent to kill.

Appellant's counsel relied upon State v. Farmer, *supra,* in which a robber struck his victim twice in the head with a stick causing his death. The Supreme Court of Ohio found that the evidence did not clearly show that death was the natural consequence of the defendant's act. In another Ohio case, State v. Doty, 94 Ohio St. 258, 113 N.E. 811 (1916), the court held that if the manner of performing an act would be reasonably likely to produce death, then an aider and abettor is equally guilty with the principal although the aider and abettor had no knowledge of the physical killing or of the weapon used. In appellant's case, the court chose to find that the evidence was sufficient for a finding that the scheme entered into by Palfy created circumstances likely to produce death. Hence Palfy was considered to have had the necessary intent. See State v. Palfy, 11 Ohio App.2d 142, 146–147, 229 N.E.2d 76 (1967).

The defense strategy of appellant's counsel appears eminently reasonable. While the strategy called for stipulating facts which were damaging to Palfy, there was no foregone conclusion that the court would decide that a probable consequence of his acts was a killing. Counsel also stipulated facts which perhaps would have shown that Morlan's death was not the natural result of what appellant had intended to do. Simply because this strategy failed, appellant cannot now claim lack of effective assistance of counsel. Cruzado v. People

of Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954); United States v. Bertone, 249 F.2d 156, 160 (3rd Cir. 1957). We conclude that the proceedings before the trial court were not a farce and a mockery of justice and that appellant has not sustained his burden of establishing ineffective counsel.

■ Appellant's second contention is that he did not intelligently waive his right to be confronted by those persons testifying against him by way of stipulation. The Sixth Amendment provides that in criminal prosecutions, the accused shall have the right to be confronted with the witnesses against him. And unless an accused person actually waives that right, this constitutional guarantee has been violated. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L. Ed.2d 314 (1966). There is a presumption against a waiver of constitutional rights. Brookhart v. Janis, *supra.* Yet if there is an intentional relinquishment of a known right then the waiver will be effective. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Our examination of the record in the instant case reveals that appellant knowingly and intelligently waived his right of confrontation, as the facts recited above amply demonstrate.

■ Finally, appellant contends that he was denied his right to a fair trial and due process of law in violation of the Fourteenth Amendment because the state misrepresented facts concerning its sole witness at trial when the prosecutor asked the witness if he were the same Merle Pemberton who had been charged with first degree murder. We have considered this argument and we find no evidence of prosecutorial wrongdoing so as to bring this case within the ambit of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), upon which appellant relies.

Finding no error in the proceedings below the judgment of the district court is hereby

Affirmed.