**Robert CARTER, Petitioner-Appellant,**

v.

**Arnold R. JAGO, Respondent-Appellee.**

No. 79–3317.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17, 1979.

Decided Dec. 22, 1980.

Paul Mancino, Jr., Cleveland, Ohio (Court-appointed CJA), for Robert Carter.

William J. Brown, Atty. Gen. of Ohio, Simon B. Karas, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before CELEBREZZE, BROWN and KENNEDY, Circuit Judges.

CELEBREZZE, Circuit Judge.

In 1973, petitioner Robert Carter was convicted of murder in the second degree by a jury in Cuyahoga County, Ohio. The Cuyahoga County Court of Appeals affirmed the conviction. In his appeal to the Ohio Supreme Court, Carter raised several additional allegations of error not presented to the appeals court. The Ohio Supreme Court denied petitioner's motion for leave to appeal for lack of a substantial constitutional question.

In 1977, Carter filed a petition for a writ of habeas corpus with the United States District Court for the Northern District of Ohio. In the return of writ the respondent suggested that Carter had failed to exhaust available state remedies and that a delayed appeal was available under Rule 5 of the Ohio Rules of Appellate Procedure. While the matter was pending in the Federal District Court, a motion for leave to file a delayed appeal was entered by Petitioner, in essence raising the issues previously raised for the first time before the Ohio Supreme Court. This motion was denied by the Cuyahoga County Court of Appeals and on appeal the Ohio Supreme Court dismissed the appeal as of right and also overruled a motion for leave to appeal. District Judge William K. Thomas thereafter denied habeas corpus relief to Carter and this appeal followed. We now affirm the decision of the District Court.

FACTS

In May of 1973, Mr. John Knific was residing at the Milner Colonial Hotel located on Prospect Avenue in Cleveland. On May 22, 1973, Mr. Knific entered the hotel at approximately 2:15 a. m. in the company of another man. Knific, informed the desk clerk, Henry Dora, that the man was his guest and that both were going to Knific's room. Knific, who had lived at the hotel for approximately two years, was at that time living in Room 614. Shortly after Knific and the other man left the lobby for Knific's room, Mr. Stanley Orack, the day clerk was informed by Dora that Knific had taken a guest to his room. Mr. Orack was living directly adjacent to Knific's room.

At approximately 3:00 a. m., Mr. Dora received a call from Knific's room requesting an outside number. The hotel telephone system required that all outgoing calls be placed through the main switchboard. Knific gave Dora the first three

digits of the number, 481, at which time Dora heard scuffling and a shot. Dora immediately called Orack's room to inform him of the trouble, and then called the police. Dora testified that Knific sounded calm when he requested the number.

Just before receiving Dora's call, Stanley Orack was watching television in his room. Orack heard scuffling and two or three loud crashes from the direction of Knific's room. After telling Dora to call the police, Orack went to Room 614 and knocked on the door. Mr. Orack stated that when he first approached the room, he could hear dresser drawers opening and closing. After his knock, the room became quiet, and then Carter opened the door. Orack told Carter that he would have to wait until the police arrived, at which time Carter reached into his waistband. Orack knocked Carter to the floor and when Carter started to get up, he had a pistol in his hand. Orack immediately returned to his room where he waited until he heard the police arrive. While he was waiting in his room, Orack heard someone rattling on his door; when he left the room, he noticed blood on his doorknob.

Patrolmen Galka and Couzer received a radio call directing them to the Milner Hotel at approximately 3:10 a. m. As they arrived on the sixth floor and started down the hallway toward Room 614, they were met by Carter who was running in their direction. Carter had blood on his head from the blow he received from Orack. He was apprehended, searched, and found to be carrying a .22 caliber revolver containing three spent shells and one live round. John Knific died on June 27, 1973, as a result of the gunshot wounds he received.

Carter testified at trial and admitted having shot John Knific. His testimony is summarized by the state court of appeals as follows:

> The appellant testified that he and Mr. Knific went to Mr. Knific's hotel room to engage in homosexual acts. When both men were undressed, Mr. Knific allegedly told the appellant that he enjoyed beating people. (R. 232). The appellant further testified that this remark made him

afraid for his life. (R. 232). The appellant made an attempt to dress himself, but at that time he was grabbed by Mr. Knific, and the appellant, who had a gun in the pocket of his jacket, reached for his gun and shot Mr. Knific. The appellant stated that he didn't intend to shoot the decedent but rather that he was pulling the trigger when he thought the chamber of the gun was empty to frighten him. (R. 238). The decedent received three bullet wounds. The decedent died one month after the shooting, allegedly as the result of the gunshot wounds.

The jury, however, returned a verdict of guilty of murder in the second degree. As a result, the petitioner was sentenced to life imprisonment.

### I.

Initially, Carter alleges error by the district court in failing to conduct an evidentiary hearing on the question of exhaustion of state remedies. The basis of this contention is difficult to discern. Admittedly, Carter raised several issues for the first time in his appeal to the Ohio Supreme Court. Since exhaustion was solely an issue of law, the district court had only to determine whether any state remedy was still available. The district court, in ruling on exhaustion noted that the court of appeals had indicated that petitioner could raise the issues presented in the delayed appeal in a post conviction proceeding in the trial court. Thus, there was reason to doubt whether Carter had exhausted all available state remedies.

■ In the interim of this appeal, this court decided *Collins v. Perini*, 594 F.2d 592 (6th Cir. 1979), and *Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979), which hold that neither a delayed appeal nor a post conviction appeal would be available to one, such as petitioner, who has already had an appeal. Petitioner's habeas petition is properly before the court for decision then. The district court's decision, however, was not founded only upon the exhaustion issue. The observation that petitioner might have further state remedies available was an aft-

erthought to a conclusion that Carter had waived several claims he sought to present in his petition. We now turn to those claims.

## II.

In his instruction to the jury the trial judge charged the jury that the burden of proof was on the defendant to prove the affirmative defense of self-defense by a preponderance of the evidence. At the time of trial, state law clearly mandated the instruction issued by the trial judge. *State v. Seliskar*, 35 Ohio St.2d 95, 298 N.E.2d 582 (1973).[1] The critical portions of the charge are as follows:

The law says this defendant cannot be convicted of any offense in the charge of this indictment notwithstanding the fact that he may have killed John Knific if, at the time of committing such offense he was acting in self-defense.

Self-defense in a proper case is the right of every person. The essential elements of self-defense are these:

First, the defendant must be free from fault, that is, he must not have provoked the defendant or purposely brought on the combat.

Second, there must be present a pending peril to life or great bodily harm, either real or apparent as to create the bona fide belief of an existing assassin.

Now, a man may repel force by force even to the extent of taking a life in the defense of his person. A bare fear, however, of being killed or receiving bodily harm is not sufficient to justify one inflicting serious injury or death upon another. It must appear that the circumstances were sufficient to excite the fear of a reasonable person similarly situated as the defendant and the defendant acted in good faith and in viewing the situation and circumstances from his standpoint, really acted under the influence of such fear and not in the spirit of malice or revenge.

Now, that is this: the jury is to look at the situation from the standpoint of the defendant himself at the time he acted as charged in the indictment and determine under the circumstance of stress and excitement surrounding him whether, without fault or carelessness on his part he did honestly believe he was in imminent danger of losing his life or receiving great bodily harm, and to prevent this it was necessary for him to act as he did act.

When a person in the lawful pursuit of his business, and without blame, is violently assaulted by one who manifestly and maliciously intends and endeavors to kill him, the person so assaulted, without retreating, although it says it may be in his power to do so without increasing his danger, may kill his assailant to save his own life or protect himself from great bodily harm.

The law of self-defense is the law of necessity, pure and simple. It is not an offensive law, but it is a defensive law and the burden of proving it rests upon the defendant, so he is not called upon to establish the defense beyond a reasonable doubt.

It is sufficient if he establishes it by a preponderance of the evidence. Now, by preponderance of the evidence is meant the greater weight of the evidence, that evidence in the case which is more con-

1. *Seliskar* was grounded upon the well-established common law rule that allocated to the defendant the burden of proving affirmative defenses by a preponderance of the evidence. Ohio Rev.Stat. 2901.05(A), effective January 1, 1974, contained no language relative to the burden of proof for affirmative defenses. The Ohio Supreme Court construed 2901.05(A) in *State v. Robinson*, 47 Ohio St.2d 103, 351 N.E.2d 88 (1976), and held that in a criminal case involving the affirmative defense of self-defense, the defendant has only the burden of going forward with evidence sufficient to raise that defense. *Robinson* received retroactive effect in *State v. Humphries*, 51 Ohio St.2d 95, 364 N.E.2d 1354 (1977). The 1978 Amendment to 2901.05(A) effectively changed the rule of *Robinson* so as to reinstate the common law rule requiring a defendant to prove an affirmative defense by a preponderance of the evidence. This requirement has been held to be constitutional in *State v. Newell*, —— Ohio App.2d —— (# 40470 Dec. 28, 1979) (8th App. Dist.).

vincing of its truth and which influences the minds of the jury; the minds of the jury in the conclusion you reach, the evidence in the case which you find be entitled to the greater weight.

Now, if you find by a preponderance of the evidence that the defendant, Robert Carter, in careful and proper use of his faculties and without wrong on his part, in good faith believed and had reasonable grounds to believe that at the time of the shooting he was in imminent danger of death or of great bodily harm at the hands of the deceased, John Knific, and that his only means of escape from the danger was taking the life of the deceased, he would be justified in so doing even though in fact the defendant may have been mistaken as to the imminence of the danger.

Although no objection was raised to this charge at trial or registered in the court of appeals, Carter raised this instruction as an assignment of error in his memorandum in support of jurisdiction in the Ohio Supreme Court, which dismissed the appeal for want of a substantial constitutional question. He now reiterates this claim in his habeas petition.

Petitioner argues that the imposition of the burden of proof on him regarding the issue of self-defense violated due process. Primary reliance is placed upon *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which makes clear that the state has the burden of proving every element of the crime beyond a reasonable doubt. In that case the state of Maine required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation in order to reduce a homicide charge to manslaughter. The Supreme Court concluded that since the prose-

cution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969), it must also prove the absence of heat of passion, which is malice beyond a reasonable doubt.[2]

In general terms, *Mullaney* held that the Fourteenth Amendment's guarantees prohibit a State from shifting to the defendant the burden of disproving an element of the crime charged when the state has presumed its existence. In *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), a unanimous Supreme Court gave retroactive effect to *Mullaney* because the major purpose of the doctrine illuminated in *Mullaney* was to enhance the truth-finding function of a criminal trial so as to erase the serious questions about the accuracy of guilty verdicts in past trials.

The state first argues that, even though Carter had the burden of proof in proving self-defense, federal habeas corpus review is precluded by his failure to object at trial to the jury instructions. *Hankerson v. North Carolina*, 432 U.S. 233, 245 n.8, 97 S.Ct. 2339, 2345, n.8, 53 L.Ed.2d 306 is cited for the proposition that failure to comply with state procedural objection requirements, as regards objecting to jury instructions, bars collateral attack. This procedural default argument centers around language in *Hankerson* suggesting that a state could minimize the impact of retroactively applying *Mullaney* by enforcing its "normal and valid" procedural rule "that failure to object to a jury instruction is a waiver of any claim of error." This notation consequently raises the contemporaneous objection rule discussed in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[3]

---

**2.** In a footnote the Court indicated that states may place a burden of *production* on the defendant without offending the intent of *Mullaney*. States can require the defendant to produce "some evidence" demonstrating action in the heat of passion before requiring the prosecution to negate this element. 421 U.S. at 701 n.28, 95 S.Ct. at 1891 n.28. Thus, while *Mullaney* proscribed the use of presumptions which shift the evidentiary burden onto the defendant

for establishing certain facts, the decision did not circumscribe all procedural presumptions which require a defendant to introduce evidence contesting the otherwise presumed or inferred facts.

**3.** Ohio Rule of Criminal Procedure 30 requires as a prerequisite to raising an allegation of error regarding a jury instruction that the party object at trial, stating specifically the grounds

■ Since petitioner failed to object at trial to the jury instructions, his threshold task is to satisfy the "cause" and "prejudice" standards of *Wainwright v. Sykes, supra.* Carter submits that the intervening *Mullaney* decision is adequate cause for his failure to object. This argument assumes that *Mullaney* would invalidate the jury instructions on self-defense and that because this development could not be anticipated,[4] the failure to object should be excused. At the very least, *Mullaney* raised a substantial spectre of doubt as to the constitutionality of Ohio's placement of the burden of proof regarding self-defense. And, it was not the responsibility of trial counsel to fathom or predict the change in due process doctrine that *Mullaney* would occasion. *Isaac v. Engle,* (6th Cir. 1980) (en banc) holds that in such a situation the absence of any plausible reason for raising an objection will provide the necessary "cause," and "prejudice" will be presumed if the burden of proof is shifted to the defendant when he has produced sufficient evidence to raise the defense of self-defense. Accordingly, petitioner's claim is cognizable in this habeas corpus proceeding.

■ The gravamen of petitioner's claim is that the Ohio law allocating to the defendant the burden of proving self-defense by a preponderance of the evidence violates principles of due process explicated in *Mullaney.* *Mullaney* prohibits the State from presuming that an element of the crime exists and then placing the burden of proving otherwise on the accused. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), reinforces this principle that so long as the legislature does not transgress constitutional limits by defining the elements of a crime so as to create a

presumption of the existence of a fact or facts essential to guilt, due process has not been violated. *Patterson* makes clear that the applicability of the reasonable doubt standard is dependent upon how the State defines the offense that is charged in any given case; unless expressly defined by statute, material elements do not include the nonexistence of a fact which, if proven, would constitute ·a statutory defense. Yet once the elements of a crime are defined by the legislature, each element must be proven beyond a reasonable doubt by the State.

Petitioner was charged with murder in the first degree and murder in the second degree. O.R.C. 2901.01, in effect at the time of trial, contained the following definition:

2901.01 Murder in the first degree. (GC 12400, 12399)

No person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, kill another.

Whoever violates this section is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommends mercy, in which case the punishment will be imprisonment for life.

Murder in the first degree is a capital crime under Sections 9 and 10 of Article, Ohio Constitution.

Court interpretation of the statute has isolated three "elements" of murder in the first degree: 1) an actual killing; 2) intent, *State v. Farmer,* 156 Ohio St. 214, 102 N.E.2d 11 (1952); *Palfry v. Cardwell,* 448 F.2d 328 (6th Cir. 1971); and 3) deliberate and premeditated malice, *State v. Butler,* 11 Ohio St.2d 23, 227 N.E.2d 627 (1967).

for his objection. Failure to raise an objection is tantamount to a procedural default and is not reviewable on appeal absent plain error or a defect affecting substantial rights. O.R.C.P. Sec. 52a; *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Lockett,* 49 Ohio St.2d 48, 358 N.E.2d 1062 (1976), overruled in part on other grounds in *State v. Downs,* 51 Ohio St.2d 47, 364 N.E.2d 1140, vacated, 438

U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978). *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir. 1980), makes clear that the standard of review established by *Wainwright* controls petitioner's claims.

4. The common law had historically regarded self-defense as an affirmative defense to be proved by the accused.

The jury instructions issued by the trial judge were in accord with these requirements:

> Murder in the first degree is the killing of another purposely and with deliberate and premeditated malice.

> Let me say to you that the defendant in this case has entered a plea of not guilty and by so doing he puts in issue each and every one of the essential elements of the crime of murder in the first degree before you can find the defendant guilty, you must find beyond a reasonable doubt, one, that John Knific was a living person and he was killed by the defendant in Cuyahoga County on or about the 27th day of June, 1973. Two, that the killing was done purposely. Three, that the killing was done with deliberate and premeditated malice.

Carter was also charged with, and eventually convicted of, murder in the second degree.

Murder in the second degree was defined by statute as follows:

> **2901.05** Murder in second degree (CC 12403)

> No person shall purposely, and maliciously kill another. Whoever violates this section, except in the manner described in 2901.01, 2901.02, 2901.03, and 2901.04 of the Revised Code, is guilty of murder in the second degree and shall be imprisoned for life.

The case law surrounding the statute identified an actual killing, intent and purpose to kill, and simple malice as elements of the crime. *State v. Butler, supra; In re Williams,* 41 Ohio App.2d 144, 324 N.E.2d 182 (1974).

The jury instructions also paralleled these requirements:

> Murder in the second degree is the killing of another purposely and maliciously and before you can find the defendant guilty of murder in the second degree you must find beyond a reasonable doubt, one, that John Knific was a living person and he was killed by the defendant in Cuyahoga County on or about the 27th day of June, 1973.

> Two, that the killing was done purposely and maliciously.

The thrust of an inquiry under *Mullaney* and *Patterson* is whether the State has defined the elements of the crime so as to presume a fact essential to guilt and then compelled the accused to negate that element of the crime. Under this analytical framework, Ohio's law passes constitutional muster. The three elements of murder—homicide, intent and malice are not presumed; each element must be proven beyond a reasonable doubt. The jury instructions on intent and malice reflect the lack of any presumption. Rather, intent and malice may be *inferred* by the jury from the given facts and circumstances.[5] While

---

**5.** Now, purpose is a decision of the mind of knowingly doing an act with a design to accomplish a specific result.

To do an act purposely is to do it intentionally. The purpose or design with which a person does an act is usually known only to himself unless he expresses it to others or indicates it by his conduct.

A person is presumed to have a purpose or a design behind his voluntary acts unless his actions are otherwise explained by the evidence.

If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the intent or purpose to kill may be inferred from the use of the weapon.

An essential element of this crime is that the act be done maliciously or with malice. Malice is a state of the mind which characterizes the doing of a wrongful, unlawful act intentionally without legal justification or excuse.

Ill-will or hostility against the person of another are not required. The word malice has a special meaning when used in law. For the purpose of these instructions, malice is the state of mind or purpose which characterizes the doing of a wrongful, unlawful act intentionally without legal justification or excuse.

Legal malice may include anger, ill-will or hostility against another. However, they are not required. In its legal sense, malice means the doing of a wrongful, unlawful act intentionally regardless of social duty.

The existence of malice is determined from the manner in which the act is done, the means, weapons used and from all of the other facts and circumstances in the evidence.

Where one intentionally shoots another with a weapon in a manner calculated to cause death, you may infer that the act was done maliciously.

presumptions of an element are clearly unconstitutional, permissive inferences do not run afoul of the Constitution. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

■ Since Ohio law does not presume that any element of the crime of murder exists, *Mullaney* is not offended. *Mullaney* was grounded upon the principle established by *In re Winship*: that the state must prove each element of the crime beyond a reasonable doubt. The practice struck down in *Mullaney* offended *Winship's* notion of due process because Maine law presumed the existence of malice and placed the burden of disproving that element upon the accused. Ohio's procedure, on the other hand, did not presume malice's presence but required the State to establish it beyond a reasonable doubt.

The jury was instructed in accordance with the statute and the guilty verdict confirms that the State successfully carried its burden of proving the elements of the crime beyond a reasonable doubt. The evidence, including that offered with respect to Carter's defense of self-defense, was insufficient to raise a reasonable doubt about his guilt as a murderer.[6] The State had satis-

---

To constitute malice in the first degree, malice must be both deliberate and premeditated.

Deliberation means the act was not the result of a sudden impulse, that some thought and consideration was given by the defendant before arriving at the purpose or intent to kill.

Premeditation means that this thought process was used and that the purpose to kill was turned over in the defendant's mind and the decision to kill made prior to the commission of the act.

There is no definite period of time that must elapse for the formation of the purpose to kill. The test is not the duration of time but the existence of the reflection. The law requires that the mind be sufficiently composed to reflect upon the killing and understand the nature and character of the act and its consequence.

If you find that the defendant actually formed the purpose to maliciously kill and deliberated and premeditated upon it before he performed the act, that is sufficient for this element of the crime.

If you find the State has proved beyond a reasonable doubt all of the essential elements of the crime of first degree murder, then your verdict must be guilty. However, if you find the State has failed to prove any one or more of the essential elements of the crime of first degree murder, then you must find the defendant not guilty of first degree murder . . . .

6. Proof of self-defense constitutes an absolute defense in that it renders the homicide justifiable or lawful. A finding of self-defense negates the element of unlawfulness and if the relevant statute commands a state to prove unlawfulness, then the state must prove the absence of self-defense.

Where state law includes unlawfulness or the absence of self-defense as an element of murder, the courts have held instructions putting the burden of proving self-defense upon the defendant to be constitutionally infirm under *Mullaney*. *Wynn v. Mahoney*, 600 F.2d 448 (4th Cir. 1979) *cert. denied*, 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1980); *Berrier v.*

*Egeler*, 583 F.2d 515 (6th Cir.) *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978); *Holloway v. McElroy*, 474 F.Supp. 1363 (M.D. Ga.1979); *Cole v. Stevenson*, 447 F.Supp. 1268 (E.D.N.C.1978) *rev'd on other grounds*, 620 F.2d 1055 (4th Cir. 1980) (*en banc*); *Porter v. Leeke*, 457 F.Supp. 253 (D.S.C.1978).

At first glance, it might appear that the Ohio courts consider unlawfulness to be an element of the crime of murder. In *State v. Simon*, (No. 6262 Jan. 16, 1980) the Court of Appeals of Montgomery County, Ohio considered a due process challenge to O.R.C. 2901.05(A) and concluded that because an indictment for a criminal offense must charge the general allegation of unlawfulness, the allegation of unlawfulness must be proved by the state. Since self-defense negates unlawfulness, the court held that the state cannot shift the burden of proving self-defense to the defendant. On January 22, 1980, the court issued a supplemental opinion retracting its decision with regard to the constitutionality of 2901.05(A) on the grounds that the question had not been at issue in the appeal.

In *State v. Tuncle*, (No. 38424, March 8, 1979), the Court of Appeals of Cuyahoga County gave full consideration to the due process problems associated with placing the burden of proof of self-defense on the accused. Although the constitutionality of 2901.05(A) was not before the court, the lead judge concluded that unlawfulness is a fact to be proved by the state in a prosecution for voluntary manslaughter. Thus the burden of proving self-defense could not be placed on the defendant. To reach this result the writing judge relied on the Ohio Constitution which requires that every indictment (but not statute) allege that the offense is "against the peace and dignity of the State of Ohio," finding this language to be the functional equivalent of "unlawfulness." While this result is supported by the fact that Ohio defines voluntary manslaughter as an "unlawful killing", the vitality of *Tuncle* is sapped by the

fied the command on *In re Winship* that it prove beyond a reasonable doubt "every fact necessary to constitute the crime with which (Carter was) charged." 397 U.S. at 364, 90 S.Ct. at 1072. And as the Supreme Court noted in *Patterson*, 432 U.S. at 206, 97 S.Ct. at 2324:

> In convicting *Patterson* under its murder statute, New York did no more than *Leland* and *Rivera* permitted it to do without violating the Due Process Clause. Under those cases, once the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence.

■ The above analysis applies with equal force to the instant case. Accordingly, under the Ohio statutes in effect at the time of petitioner's trial, it was not a due process violation for Ohio to compel a defender to shoulder the burden of proving the affirmative defense of self-defense by a preponderance of the evidence.

## III.

Petitioner also argues that his constitutional rights were violated by the admission of the testimony of Howard Sadler. Specifically, Carter submits that the testimony of

Sadler 1) was unrelated to the shooting of Knific; 2) was prejudicial insofar as Sadler testified from a wheelchair; 3) was used by the prosecution solely to inflame the passions and prejudices of the jury; and 4) the jury was improperly charged about the purpose of Sadler's testimony.[7]

■ Petitioner attempts to raise these claims to a constitutional dimension by alleging that these errors were so prejudicial that he was denied his due process right to a fair trial. Our inquiry in reviewing this claim is directed to whether the evidence was rationally connected to the crime charged. *Manning v. Rose*, 507 F.2d 889 (6th Cir. 1974). That connection is established here by the similarity of the crimes. Petitioner's defense was self-defense in both cases. In both cases, Carter had a deadly weapon on his person; in both, he had been drinking prior to the shooting; and in both, the victim was a homosexual with whom Carter had had a relationship.

■ Carter also contends that he was denied a fair trial by virtue of prosecutorial misconduct in the presentation of Sadler's testimony. The District Court rejected this claim:

> Petitioner next argues that he was denied his right to a fair trial because Sadler testified from a wheelchair, and was questioned about the extent of his injuries. The trial judge's remarks at the

express disagreement of the second judge on the panel and by the third judge who concurred only in the result.

Moreover, *Tuncle* is superseded by *State v. Newell* (No. 40470, December 28, 1979) in which the same court upheld the constitutionality of 2901.05(A) in rejecting the due process challenges discussed *supra*. *See also State v. Mascatello*, (No. 40484) (8th App.Dist., March 13, 1980). Also significant is *State v. Abner*, 55 Ohio St.2d 251, 379 N.E.2d 228 (1978), in which the Ohio Supreme Court held a trial judge did not err in refusing to give an instruction that the prosecution must disprove the affirmative defense of self-defense beyond a reasonable doubt. Thus, the current controlling Ohio law indicates that it is not a due process violation to force a defendant to prove self-defense by a preponderance of the evidence. These recent decisions are relevant in light of the fact that the 1978 statute which they interpret imposes

the same burden of proof on a defendant as was imposed on petitioner in his 1973 trial.

Allowing a state to treat self-defense as an affirmative defense is consistent with the concerns expressed in *Patterson* for allowing the legislative branch sufficient latitude to define mitigating factors that affect criminality. While forcing the state to disprove self-defense may be wise as a matter of policy, *Patterson* does not authorize judicial modification of a legislature's evidentiary standard in the absence of constitutional infirmities.

7. Insofar as petitioner's counsel attempts to relitigate these claims as a matter of state law, he evinces a fundamental misunderstanding of the nature and purpose of habeas corpus review. This court does not sit to exercise direct review over state court decisions. Rather, the scope of habeas corpus review is confined to errors of constitutional dimension. *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976).

time Sadler was called to testify indicate that Sadler was "physically unable to take the witness chair," (Tr. 148) and therefore was permitted to testify from his wheelchair. This is not an instance, therefore, of a gratuitous attempt to inflame the passions of the jury. Certainly the fact that Sadler was in a wheelchair would have an impact on the judge's weighing of the probative value and prejudicial effect of Sadler's testimony. But this court cannot say that the decision to permit Sadler to testify from a wheelchair deprived petitioner of his right to a fair trial.

As far as the prosecutor's question about the extent of Sadler's injury is concerned, this court agrees with the court of appeals that the question, though perhaps irrelevant, was not prejudicial error; and in any event did not deprive petitioner of his due process right to a fair trial. The question was a single question at the end of Sadler's testimony, and basically confirmed what must have already been obvious to the jury—that Sadler was unable to walk. Moreover, the jury was adequately instructed on the limited purpose of Sadler's testimony. (Tr. 327). Taken in context, this question and answer provides no basis for federal habeas relief.

\* \* \* \* \* \*

Finally, petitioner contends that the prosecutor's closing remarks about Sadler's testimony were so prejudicial as to deny him a fair trial. As the court of appeals held, these remarks were not relevant and were inappropriate.[4] (Footnote omitted). Nonetheless, *Donnelly v. DeChristofaro*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), teaches that not every improper remark by a prosecutor is grounds for federal habeas relief. The remark must be viewed in context; in this case it was an isolated argument coming at the end of an otherwise unobjectionable closing argument. The jury was instructed that the remarks of counsel were not evidence (Tr. 275, 276, 324), and was further instructed about the limited purpose of Sadler's testimony (Tr.

327). Under these circumstances, the prosecutor's remark cannot be said to have "made respondent's trial so fundamentally unfair as to deny him due process." *Donnelly v. DeChristofaro, supra,* at 645, 94 S.Ct. at 1872.

■ Finally, Carter claims that evidence was insufficient to support his conviction. This claim is wholly devoid of evidentiary support as recognized by the District Court:

> The record in this case clearly supports the court of appeals' determination that there was sufficient evidence to sustain a conviction of second degree murder. Among other facts supporting the finding of malice and intent to kill are the following: (1) decedent was shot three times, twice in the head and once in the abdomen; (2) just prior to the shooting, decedent called the hotel desk and seemed calm, negating the suggestion that the shooting was provoked; (3) after the shooting, Mr. Orack heard dresser drawers opening and closing, suggesting that robbery was the impetus for the shooting; (4) petitioner's explanation for the shooting, as was demonstrated in the prosecutor's closing remarks, was so inconsistent and implausible that it can hardly be said to have been beyond the province of the jury to reject it.

Applying the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a review of the record in this case in the light most favorable to the prosecution shows that a rational factfinder could have found petitioner guilty beyond a reasonable doubt of murder in the second degree under Ohio law.

For the reasons stated above, the decision of the District Court denying a writ of habeas corpus is affirmed.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in Judge Celebrezze's opinion with the exception of his analysis of *Wainwright v. Sykes.* I would affirm the judgment of the District Court on this ground as

well for the reasons stated in my dissent in *Isaac v. Engle*; No. 78–3488, (6th Cir., 1980) (*en banc*) (Kennedy, J., dissenting).